Stephanie R. Tatar – State Bar No. 237792
**TATAR LAW FIRM, APC**
3500 West Olive Avenue
Suite 300
Burbank, California 91505
Tel. (323) 744-1146
Fax. (888) 778-5695
Stephanie@thetatarlawfirm.com

*Attorneys for Plaintiff James Wesley Carter
and the proposed Class*

*Additional attorneys on signature page*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WESLEY CARTER, individually and on behalf of a class of similarly situated persons, <br><br> Plaintiff, <br><br> vs. <br><br> MCDONALD'S RESTAURANTS, and BACKGROUNDCHECKS.COM <br> Defendants. | Case No. 2:15-cv-5728 <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681 *et seq.* and CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, Cal. Civ. Code §§ 1785.1 *et seq.* <br><br><br> JURY TRIAL DEMANDED** |

Plaintiff JAMES WESLEY CARTER ("Plaintiff"), on behalf of himself and all similarly situated individuals, complains and alleges against Defendants MCDONALD'S RESTAURANTS ("McDonald's") and BACKGROUNDCHECKS.COM ("BGC") as follows:

## I.   **PRELIMINARY STATEMENT**

1.     This is a consumer class action brought on behalf of applicants for employment with McDonald's restaurants owned and operated by the Richard and Dale Shalhoub Family Trust.  This action is based upon McDonald's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* (FCRA) and the California Consumer Credit Reporting Agencies Act (CCRAA), Cal. Civ. Code §§ 1785.1 *et seq*.  Plaintiff contends that Defendant McDonald's Restaurants systematically violates the rights of consumers who applied for jobs with McDonald's by failing to notify such consumers of their rights under California law; failing to obtain proper consent under California law; failing to provide job applicants with the clear and conspicuous disclosure, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes; and, by using employment background reports to make adverse employment decisions without timely providing applicants who are the subject of these reports a copy of the reports obtained, along with a summary of rights, and a sufficient amount of time to contest and/or correct any errors in the reports, before taking adverse action.

2.     The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4) (emphasis added), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the consumer information they disseminate.  15 U.S.C. § 1681(b).  Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on "users" of "consumer

reports" such as McDonald's. This action involves McDonald's systematic violation of several of those important rules.

3.     After being hired by McDonald's to work at Restaurant No. 12307 in Cathedral City, California, Plaintiff was fired from his job based on a standardized background screen conducted by Defendant BGC pursuant to an agreement with McDonald's.   BGC inaccurately reported Plaintiff as a felon with a robbery conviction.

4.     In violation of the FCRA, McDonald's willfully failed to provide Plaintiff with a "clear and conspicuous disclosure … in writing … at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes," as required by 15 U.S.C. § 1681b(b)(2)(A)(i); and, failed to provide Plaintiff with the mandatory "pre-adverse action notice" and a copy of the damaging background report it obtained from the background screening company *before* the adverse action occurred, as required by 15 U.S.C. § 1681b(b)(3).  Every year, numerous individuals who have applied to McDonald's for employment, or who were already working there, have been subjected to background screens and have been similarly aggrieved by the same willful violation of 15 U.S.C. § 1681b(b)(2) and (3).

5.     McDonald's has also engaged in systematic violation of the CCRAA by failing to provide prior notice to the employment applicant of the intent to request a consumer credit report, to inform the person of the source of the report, to provide the person with the opportunity to obtain a copy of the credit report and, when taking adverse action because of information in the credit report, to identify to the employment applicant the consumer credit reporting agency making the report.

6.     Plaintiff seeks monetary relief under 15 U.S.C. § 1681n for himself and a class of similarly situated employment applicants and employees.  Plaintiff also seeks monetary and injunctive relief under section 1785.31 of the CCRAA.

CLASS ACTION COMPLAINT

## II.    **PARTIES**

7.      Plaintiff James Wesley Carter is an adult individual residing in Cathedral City, Riverside County, California.

8.      Defendant McDonald's Restaurants is the entity utilized by the Richard and Dale Shalhoub Family Trust, a franchisee of McDonald's USA, LLC, with offices located at 77848 Wolf Road, Suite 200, Palm Desert 92211.  Defendant owns and operates numerous McDonald's franchises, including restaurants operated by Shalhoub's McDonald's; Shalhoub Management Company, Inc.; Desert Gate Management, LLC; DNR Management LLC; and, DNS2 Management LLC.  See http://www.corporationwiki.com/California/Palm-Desert/dns2-manageme        nt-llc/103395938.aspx.   Included in the franchises is McDonald's Restaurant No. 12307, a fast food restaurant which is located at 31033 Date Palm Drive, Cathedral City, California 92234.

9.      McDonald's is a "person" which uses "consumer reports" to make "employment decisions" and take "adverse action" against "consumers," as those terms are defined by 15 U.S.C. § 1681a.

10.     McDonald's is also a "person" which uses "consumer credit reports" for "employment purposes" to take "adverse action" against "consumers," as those terms are defined by section 1785.3 of the CCRAA.

11.     Defendant BGC is headquartered in Dallas, Texas and maintains an address of 12770 Coit Road, Suite 1150, Dallas, Texas, 75251.  BGC maintains and operates a national database of public records and related employment histories as a nationwide consumer reporting agency ("CRA").  BGC markets itself as possessing "[t]he industry's #1 criminal conviction database [which] contains more than 500 million criminal records from over 1,000 sources."  *See* www.backgroundchecks.com.   BGC uses its database to prepare and furnish consumer reports for employment and other purposes. BGC provides these

consumer reports to prospective and existing employers of Plaintiff and members of the Class. Many of these employers, like McDonald's, refused to hire or discharged Plaintiff and other individuals based in whole or in part on the contents of the consumer reports.

### III.   JURISDICTION AND VENUE

12.    This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. § 1681p in that claims arise under the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*., and supplemental jurisdiction exists for the state law claims under 28 U.S.C. § 1367.   Venue is properly in this District pursuant to 28 U.S.C. § 1391(b).

### IV.   FACTUAL ALLEGATIONS

#### A.   McDonald's Hiring Practices

13.    McDonald's routinely obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information as a basis for adverse employment action such as termination, reduction of hours, change in position, failure to hire and failure to promote.

#### 1.    Allegations Regarding Willful Failure to Obtain Proper Authorization to Procure Consumer Reports

14.    Under the FCRA, a "user" of a consumer report, such as McDonald's, may not lawfully obtain any background consumer report on any prospective job applicant, or "consumer" as used in the FCRA, unless "a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i).

15.     The purpose of the stand-alone disclosure is to inform the consumer job applicant that a background report will be procured about him or her.

16.     McDonald's and BGC are parties to form contracts pursuant to which BGC agrees to provide consumer reports for employment purposes within the meaning of section 1681b(b) of the FCRA.  In connection with its contracts, BGC requires customers such McDonald's to acknowledge and agree that the information BGC will provide in connection with a background check is regulated FCRA consumer report information.  In doing so, BGC further requires that customers such as McDonald's follow FCRA procedures and safeguards that apply to the use of consumer reports.

17.     As part of a standard agreement, BGC requires its employer customers to provide the certifications mandated by 15 U.S.C. § 1681b(b), including a certification that, for each background screen ordered, the employer-customer will have disclosed in writing to the job applicant its intent to procure a "consumer report" as part of the application and the applicant will have provided the customer with a written consent to such procurement.

18.     Upon information and belief, McDonald's uniform practice is not to obtain the required authorization prior to procuring a consumer report concerning its job applicants.

19.     McDonald's knew or should have known that its failure to provide a stand-alone disclosure was a violation of the FCRA because the statutory language of section 1681b(b)(2)(A) was pellucidly clear that McDonald's could not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless "a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes."   15 U.S.C. § 1681b(b)(2)(A)(i).

20.     The FCRA statutory text, Federal Trade Commission opinions and case law[1] constitute significant authority existing during the time that McDonald's was required to provide stand-alone disclosures prior to obtaining consumer reports.

### 2.     Allegations Regarding Willful Failure to Provide FCRA Pre-Adverse Action Notice

21.     The FCRA provides that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates ... a copy of the report[.]"  15 U.S.C. § 1681b(b)(3)(A)(i).

22.     "Adverse action" as used in the employment context means "a denial of employment or any decision for employment purposes that adversely affects any current or prospective employee."  15 U.S.C. § 1681a(k)(1)(B)(ii).   Under the FCRA's "catchall" provision, the term "adverse action" also extends to "any action taken or determination that is made in connection with an application that was made by ... any consumer" and that is "adverse to the interests of the consumer."  15 U.S.C. § 1681a(k)(1)(B)(iv).

23.     The notice required by section 1681b(b)(3) is generally referred to as a pre-adverse action notice, and its "clear purpose" is "to afford employees time to

---

[1]     *See Martin v. Fair Collections & Outsourcing, Inc.,* No. GJH-14-3191, 2015 WL 4064970 (D. Md. June 30, 2015); *Moore v. Rite Aid Hdqtrs Corp.*, No. CIV.A. 13-1515, 2015 WL 3444227 (E.D. Pa. May 29, 2015); *Lengel v. HomeAdvisor, Inc.*, No. 15-2198-RDR, ___ F. Supp. 3d ___, 2015 WL 2088933, at *8 (D. Kan. May 6, 2015); *Speer v. Whole Food Market Group, Inc.*, No. 14-cv-03035 (M.D. Fl. Mar. 30, 2015); *Milbourne v. JRK Residential America, LLC*, 2015 WL 1120284 (E.D. Va. March 10, 2015); *Miller v. Quest Diagnostics*, 2015 WL 545506 (W.D. Mo. Jan. 28, 2015); *Jones v. Halstead Management Company, LLC*, 2015 WL 366244, *5-6 (S.D.N.Y. Jan. 27, 2015); *Avila v. NOW Health Group, Inc.*, 2014 WL 3537825, *2-3 (N.D. Ill. July 17, 2014); *Reardon v. ClosetMaid Corporation*, 2013 WL 6231606, *10-11 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance"); *Singleton v. Domino's Pizza, LLC*, 2012 WL 245965, *9 (D. Md. Jan. 25, 2012) ("[B]oth the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document.")

discuss reports with employers or otherwise respond before adverse action is taken." *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F.Supp.2d 532, 537 (E.D. Pa. 2012).

24.    As a matter of standard business practice, McDonald's does not maintain or follow a policy or practice of providing employees and employment applicants with the pre-adverse action notice required by the FCRA.  To the contrary, McDonald's uniform practice is to immediately take adverse action against consumers on the basis of consumer background reports without providing the consumer with the statutorily mandated opportunity to dispute inaccuracies and misinformation contained in background reports.

25.    This practice violates one of the most fundamental protections afforded to employees under the FCRA, and also runs counter to longstanding regulatory guidance.[2]

### 3.    Allegations Regarding Willful Failure to Comply with Cal. Civ. Code § 1785.20.5(a)

26.    The CCRAA provides as follows:

> Prior to requesting a consumer credit report for employment purposes, the user of the report shall provide written notice to the person involved.  The notice shall inform the person that a report will be used, and shall identify the specific basis under subdivision (a) of Section 1024.5 of the Labor Code for use of the report.  The notice shall also inform the person of the source of the report, and shall contain a box that the person may check off to receive a copy of the credit report.  If the consumer indicates that he or she wishes to receive a copy of the

---

[2]    *See* Letter from William Haynes, Fed. Trade Comm'n, to A. Michael Rosen of Background America, Inc. (June 9, 1998) ("[15 U.S.C. § 168lb(b)(3)(A)] requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information ....").

report, the user shall request that a copy be provided to the person when the user requests its copy from the credit reporting agency.  The report to the user and to the subject person shall be provided contemporaneously and at no charge to the subject person.

Cal. Civ. Code § 1785.20.5(a).

30.     The term "consumer credit report" is defined in the CCRAA as including "any written, oral or other communication of any information by a consumer credit reporting agency bearing on a consumer's credit worthiness, credit standing, or credit capacity, which is used or is expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for: … (2) employment purposes."  Cal. Civ. Code § 1785.3(c).

31.     The term "employment purposes" is defined in the CCRAA as "when used in connection with a consumer credit report, means a report used for the purpose of evaluating a consumer for employment, promotion, reassignment, or retention as an employee."  Cal. Civ. Code § 1785.3(f).

32.     Upon information and belief, as a matter of standard business practice, McDonald's fails to provide written notice to the person involved, prior to requesting a consumer credit report for employment purposes, which identifies the specific basis under section 1024.5 of the California Labor Code for use of the report, does not identify the source of the report, and does not provide notice which contains a box which the job applicant can check to receive a copy of the report, as required by section 1785.20.5(a) of the CCRAA.  This harms consumers by preventing them from exercising their rights and to compel the user and the consumer reporting agency to provide contemporaneous disclosure of their background reports when such reports are provided to the requesting employer-user.  Such simultaneous disclosure allows consumers to discover job threatening errors in their background reports before it is too late.  Given Plaintiff's interest in pursuing employment, McDonald's failure to comply with the CCRAA presents a risk that he will be harmed by such conduct in the future.

33.    McDonald's actions and failures to act are knowing, reckless and willful, as the CCRAA statutory requirement is clear on its face and there is no objectively reasonable reading of the statute that would justify McDonald's failure to provide the identity of consumer reporting agencies that make reports concerning job applicants.

### 4.    Allegations Regarding Willful Failure to Comply with Cal. Civ. Code § 1785.20.5(b)

34.    The CCRAA also provides as follows:

> Whenever employment involving a consumer is denied either wholly or partly because of information contained in a consumer credit report from a consumer credit reporting agency, the user of the consumer credit report shall so advise the consumer against whom the adverse action has been taken and supply the name and address or addresses of the consumer credit reporting agency making the report.

Cal. Civ. Code § 1785.20.5(b).

35.    The term "adverse action" is defined in the CCRAA as including "[a]ny denial of employment or any other decision made for employment purposes which adversely affects any current or prospective employee."   Cal. Civ. Code § 1785.3(a)(2).

36.    Upon information and belief, as a matter of standard business practice, when McDonald's denies employment to job applicants based on information contained in a consumer credit report from a consumer credit reporting agency, McDonald's does not maintain or follow a policy or practice of supplying the consumer against whom adverse action has been taken with the name and address of the consumer credit reporting agency making the report.

37.    To the contrary, McDonald's uniform practice when taking adverse action against job applicants on the basis of consumer background reports is not to provide the consumer with the statutorily mandated information concerning the identity of the consumer reporting agency making the report, thus denying

consumers the opportunity to dispute inaccuracies and misinformation contained in background reports.

38.     McDonald's actions and failures to act are knowing, reckless and willful, as the CCRAA statutory requirement is clear on its face and there is no objectively reasonable reading of the statute that would justify McDonald's failure to provide the identity of consumer reporting agencies that make reports concerning job applicants.

**B.     The Experience Of The Representative Plaintiff**

39.     A number of years ago, Plaintiff James Wesley Carter had applied for employment at a bowling alley in Alabama and had been rejected for employment due to a background report that inaccurately stated that Plaintiff was convicted of a robbery in Cumberland County, North Carolina.  The individual who was convicted was a black male.  Plaintiff is Caucasian, and has never been to North Carolina.

40.     In late November or early December 2014, Plaintiff applied to work at McDonald's Restaurant No. 12307, located on Date Palm Drive, Cathedral City, California 92234.

41.     As evidenced by the absence in Plaintiff's personnel file of the FCRA-required authorization for McDonald's to obtain a background report concerning Plaintiff, McDonald's did not comply with FCRA section 1681b(b)(2)'s requirement of a clear and conspicuous stand-alone disclosure of its intent to obtain such a report.

42.     Following an in-person interview, orientation and training, Plaintiff was hired by Defendant to work at McDonald's Restaurant No. 12307 in early to mid-December 2014.

43.     On his first day at his new job, Plaintiff worked as a cashier at the restaurant for approximately four hours.

44.     When Plaintiff returned to work for his next shift, he was told to speak with the McDonald's manager, named Nadia.

45.     Nadia spoke with Plaintiff in the open restaurant, next to the cash register, in the presence of and within the hearing of other workers and McDonald's customers.

46.     Nadia told Plaintiff that she had received a telephone call from the home office and was told by the home office that McDonald's had obtained a background report on him that showed criminal history.  Nadia told Plaintiff that his employment was terminated immediately due to the contents of the report.

47.     Plaintiff asked if the report showed a robbery, and Nadia nodded yes.

48.     Plaintiff informed Nadia that if anyone were to look at the report, it would show that a black male was the perpetrator of the robbery.

49.     Plaintiff requested a copy of the report so that he could contest any inaccuracies.  Nadia responded that Plaintiff would have to contact McDonald's home office.

50.     Plaintiff asked the manager what he could do to show that the report contained inaccuracies and the manager responded that he would have to show that the report inaccurately related to another person.  When Plaintiff asked the manager how he was supposed to do that, she said that she did not know, and repeated that he should call McDonald's home office.

51.     The conversation with Nadia was overheard by other persons in the area, which caused Plaintiff discomfort, embarrassment and humiliation.

52.     Plaintiff then attempted to contact McDonald's home office.  He eventually succeeded in getting through to a representative named Rebecca, on or about December 30, 2014.  He asked if he could get a copy of the background report that caused him to lose his job, or at least be told the name of the background check company that had provided the report, and was told by Rebecca that it is McDonald's policy not to provide copies of such reports and such information.

53.    As a result of Defendant's actions, Plaintiff was deprived of employment and suffered actual damages.

54.    At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law, California law and the rights of the Plaintiff herein.

## V.    CLASS ACTION ALLEGATIONS

55.    Plaintiff  brings this action on behalf of a class defined as follows:

(a)    All employees or applicants for employment at Defendant's McDonald's restaurants residing in the United States (including all Territories and other political subdivisions of the United States) as to whom, within five years prior to the filing of this action and continuing through the final resolution of this case, McDonald's did not provide the clear and conspicuous stand-alone disclosure required by section 1681b(b)(2) of the FCRA.

(b)    All employees or applicants for employment at Defendant's McDonald's restaurants residing in the United States (including all Territories and other political subdivisions of the United States) who, within five years prior to the filing of this action and continuing through the final resolution of this case, were the subject of a background report that was used by McDonald's to make an adverse employment decision regarding such employee or applicant for employment, and for whom McDonald's failed to provide the employee or applicant a copy of their consumer report or a copy of the FCRA summary of rights at least five business days before it took such adverse action.

(c)    All employees or applicants for employment at Defendant's McDonald's restaurants residing in the State of California who, within two years prior to the filing of this action and continuing through the final resolution of this case, were the subject of a background report requested by McDonald's and for

whom McDonald's failed to provide the employee or applicant with the prior written notice required by section 1785.20.5(a) of the CCRAA.

(d)   All employees or applicants for employment at Defendant's McDonald's restaurants residing in the State of California who, within two years prior to the filing of this action and continuing through the final resolution of this case, were the subject of a background report that was used by McDonald's to make an adverse employment decision regarding such employee or applicant for employment, and for whom McDonald's failed to provide the employee or applicant with the name and address of the consumer credit reporting agency that made the report.

56.   **Numerosity.  FED. R. CIV. P. 23(a)(1).  T**he Class members are so numerous that joinder of all is impractical. Upon information and belief, McDonald's obtains authorizations for background reports on numerous consumers and obtains numerous reports on employees and applicants for employment each year, and those persons' names and addresses are identifiable through documents maintained by McDonald's.

57.   **Existence and Predominance of Common Questions of Law and Fact.  FED. R. CIV. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

(a)   Whether McDonald's willfully or negligently violated section 1681b(b)(2) of the FCRA by procuring or causing to be procured consumer reports for employment purposes without providing a clear and conspicuous disclosure in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes;

(b)   Whether McDonald's willfully or negligently failed to provide each employee or applicant for employment a copy of their consumer report at least five business days before it took an adverse action based upon the consumer report;

1      (c)     Whether McDonald's willfully or negligently failed to provide each employee or applicant for employment a copy of their written notice of FCRA rights at least five business days before it took an adverse action based upon the consumer report;

      (d)     Whether McDonald's, prior to requesting a consumer credit report for employment purposes, provided written notice to the person involved pursuant to section 1785.20.5(a) of the CCRAA.

      (e)     Whether McDonald's, when it made an adverse employment decision regarding an applicant for employment because of information contained on a background report, willfully or negligently failed to supply applicant with the name and address of the consumer credit reporting agency that made the report.

      58.    **Typicality.  FED. R. CIV. P. 23(a)(3)**.  Plaintiff's claims are typical of the claims of each Class member.  Plaintiff has the same claims for monetary damages and injunctive relief that he seeks for absent class members.

      59.    **Adequacy.  FED. R. CIV. P. 23(a)(4).**  Plaintiff is an adequate representative of the Class.  His interests are aligned with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously.  Plaintiff and his Counsel will fairly and adequately protect the interests of members of the Class.

      60.    **Predominance and Superiority.  FED. R. CIV. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by McDonald's conduct.  It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them.  Even if the

members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by McDonald's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI.   CAUSES OF ACTION
### COUNT I
### 15 U.S.C. § 1681b(b)(2)

61.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

62.    Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

63.    The background reports ordered by McDonald's are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

64.    McDonald's is liable for willfully or negligently violating section 1681b(b)(2) of the FCRA by procuring or causing to be procured a consumer report for employment purposes without first providing a clear and conspicuous disclosure in writing to the consumer in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

WHEREFORE, Plaintiff Carter and the Class pray for relief as follows:

A.    An order certifying the proposed Class under Rule 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.    An award of actual, statutory and punitive damages for Plaintiff and the Class;

C.     An award of pre-judgment and post-judgment interest as provided by law;

D.     An award of attorneys' fees and costs; and,

E.     Such other relief as the Court deems just and proper.

## COUNT II

### 15 U.S.C. § 1681b(b)(3)

65.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

66.     Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

67.     The background reports obtained by McDonald's are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

68.     The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

69.     For purposes of this requirement, an "adverse action" includes "any . . . . decision . . . that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

70.     McDonald's is a "person" that regularly uses background reports for employment purposes.

71.     The FCRA requires McDonald's, as a user of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA.  15 U.S.C. § 1681b(b)(3)(A)(i), (ii).

72.     McDonald's willfully violated section 1681b(b)(3) of the FCRA by failing to provide Plaintiff and the members of the Class the following before using such reports:  (a) the required pre-adverse action notice, (b) a copy of the consumer report, and (c) a written description of the consumer's rights under the FCRA, and thereby denied the consumers a sufficient time to be able to review and dispute the report before McDonald's took adverse action on their employment or promotion applications.

WHEREFORE, Plaintiff Carter and the Class pray for relief as follows:

A.     An order certifying the proposed Class under Rule 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.     An award of actual, statutory and punitive damages for Plaintiff and the Class;

C.     An award of pre-judgment and post-judgment interest as provided by law;

D.     An award of attorneys' fees and costs; and,

E.     Such other relief as the Court deems just and proper.

## COUNT III
### CAL. CIV. CODE § 1785.20.5(a)

73.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

74.     Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).

75.     The above-mentioned background report is a "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(c).

76.     Pursuant to Cal. Civ. Code § 1785.31, McDonald's is liable for violating the CCRAA by failing to provide written notice prior to obtaining consumer credit reports for employment purposes which identified the specific basis under Cal. Labor Code § 1024.5 for use of the report, identified the source of the

report, and contained a box that the job applicant could check off to receive a copy of the report, pursuant to Cal. Civ. Code § 1785.20.5(a), with respect to Plaintiff and the Class.

WHEREFORE, Plaintiff Carter and the Class pray for relief as follows:

A.     An order certifying the proposed Class under Rule 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.     An award of actual damages for Plaintiff and the Class;

C.     An award of punitive damages of $100 to $5,000 per Class member per violation of the CCRAA;

D.     Injunctive relief requiring McDonald's to comply with applicable law;

E.     An award of pre-judgment and post-judgment interest as provided by law;

F.     An award of attorneys' fees and costs; and,

G.     Such other relief as the Court deems just and proper.

## COUNT IV

### CAL. CIV. CODE § 1785.20.5(b)

64.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

65.     Plaintiff is a "consumer" as that term is defined by CAL. CIV. CODE § 1785.3(b).

66.     The above-mentioned background report is a "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(c).

67.     Pursuant to Cal. Civ. Code § 1785.31, McDonald's is liable for violating the CCRAA by failing to advise consumers against whom adverse action has been taken that the action was based in whole or in part on information contained in a consumer credit report from a consumer credit reporting agency, and by failing to supply the name and address of the consumer credit reporting agency making the

report, pursuant to Cal. Civ. Code § 1785.20.5(b), with respect to Plaintiff and the Class.

WHEREFORE, Plaintiff Carter and the Class pray for relief as follows:

A.     An order certifying the proposed Class under Rule 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.     An award of actual damages for Plaintiff and the Class;

C.     An award of punitive damages of $100 to $5,000 per Class member per violation of the CCRAA;

D.     Injunctive relief requiring McDonald's to comply with applicable law;

E.     An award of pre-judgment and post-judgment interest as provided by law;

F.     An award of attorneys' fees and costs; and,

G.     Such other relief as the Court deems just and proper.

## COUNT V
## Individual Claim of Plaintiff Carter v. BGC
## Violation of 15 U.S.C. § 1681e(b)

58.     Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

59.     Plaintiff brings this claim for himself individually.

60.     BGC's failure to exclude from Plaintiff's report derogatory information not in his criminal history caused McDonald's to terminate Plaintiff's employment.

61.     Had BGC employed, as the FCRA requires, "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates," Plaintiff's report would not have included this derogatory, and inaccurate, information.

62.     Failure to employ such procedures violates 15 U.S.C. § 1681e(b), entitling Plaintiff to actual damages for this failure under 15 U.S.C. § 1681o.

63.     As a result of this conduct by BGC, the Plaintiff suffered actual damages, including without limitation, by example only and as described herein on his behalf by Counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

64.     Plaintiff is also entitled to recover costs and attorneys' fees as well as appropriate equitable relief from BGC in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests and demands a jury trial on all issues triable by jury.

Dated:   July 29, 2015                    Respectfully submitted,

Stephanie R. Tatar
**TATAR LAW FIRM**
3500 West Olive Avenue
Suite 300
Burbank, CA 91505
Tel. (323) 744-1146
Fax. (888) 778-5695

**FRANCIS & MAILMAN, P.C.**
James A. Francis (*pro hac vice* forthcoming)
David A. Searles (*pro hac vice* forthcoming)
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Tel. (215) 735-8600
Fax. (215) 950-8000

CLASS ACTION COMPLAINT